**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **AARON EVANS,** | § | |
| | § | |
| | § | **CIVIL ACTION NO.  6:22-CV-00187-JCB-** |
| **Plaintiff,** | § | **JDL** |
| | § | |
| **v.** | § | |
| | § | |
| **BOBBY LUMPKIN, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

**<u>REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Aaron Evans, an inmate at the Texas Department of Criminal Justice, Hughes Unit, proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights in prison. The complaint was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Plaintiff originally filed this lawsuit against TDCJ Director Bobby Lumpkin. (Doc. No. 1.) On June 13, 2022, Plaintiff filed an amended complaint that named as defendants Officers John Ellis, Geneva Robinson, Ragsdale, and Henry Sargant; however, the amended complaint does not reference Director Lumpkin. (Doc. No. 13.) Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages. *Id.* On January 18, 2023, the court dismissed Plaintiff's claims for declaratory and injunctive relief for lack of jurisdiction, and all claims against Defendant Ragsdale for failure to state a claim upon which relief may be granted. (Doc. No. 27.) The

remaining claims in this case are those for compensatory and punitive damages against Defendants Ellis, Robinson, and Sargant.[1]

Before the court is Defendants Ellis, Robinson, and Sargant's partial motion for summary judgment filed on May 25, 2023. (Doc. No. 37.) For the reasons set forth herein, the court **RECOMMENDS** that Defendants' Motion be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

### I.    Plaintiff's Complaint

In his amended complaint, Plaintiff alleges that on January 27, 2022, while confined as an inmate at the Texas Department of Criminal Justice, Coffield Unit, Defendant Sargant refused to provide Plaintiff's wing of the prison with food, water, or access to showers. (Doc. No. 13, at 5.) Inmates on the wing then sought help from Defendant Robinson, who called Defendant Ellis to the scene. *Id.* The inmates explained to Ellis that they had not received food, water, or the opportunity to shower that day. *Id.* "Then Ellis got mad at Plaintiff for [c]omplaining and [s]prayed him directly in [the] face and right eye with [c]hemical agents." *Id.* Plaintiff asked Ellis, Sargant, and Robinson to be taken to the infirmary for medical attention, but they denied his request. *Id.*

A short time later, Ellis and Sargant returned with a "big [r]ed [w]ater hose" and sprayed cold water into several cells, including Plaintiff's. *Id.* Ellis said, "Here are y'all showers." *Id.* Then Ellis told the other officers to turn off the wing's power and open the windows "in freezing weather." *Id.*

Plaintiff claims that the incident resulted in severe headaches which persist for several hours at a time and sometimes cause vision loss. *Id.* Plaintiff attached his written grievances regarding the alleged incident. (Doc. No. 13-1.) Plaintiff sues Defendants Ellis and Sargant in their

---

[1] Defendants' partial motion for summary judgment expressly excludes Plaintiff's claims for excessive force against Defendants Ellis and Sargant for spraying Plaintiff with the water hose. (Doc. No. 37, at 2 n. 2.)

individual capacities for excessive force, denial of medical care, and denial of food and water in violation of the Eighth Amendment. (Doc. No. 13, at 3.) Plaintiff sues Defendant Robinson in her individual capacity for denial of medical care and denial of food and water in violation of the Eighth Amendment. *Id.* Plaintiff requests relief in the form of unspecified compensatory and punitive damages and such other relief as may be proper. *Id.* at 3, 6.

## II.    Defendants' Amended Answer

Defendants filed an amended answer on February 15, 2023, admitting that Plaintiff was an inmate incarcerated within the TDCJ when Plaintiff filed his complaint, but denying all other claims and requested relief. (Doc. No. 29.) Defendants allege that Plaintiff has failed to state a claim under 42 U.S.C. § 1983. *Id.* Defendants raise the affirmative defense of qualified immunity, sovereign immunity, and failure to exhaust. *Id.*

## III.   Defendants' Partial Motion for Summary Judgment

Defendants' partial motion for summary judgment contests Plaintiff's claims on four grounds. First, Defendants argue that Defendant Ellis did not use force against Plaintiff by spraying him with chemical agents, and even if Defendant Ellis did spray Plaintiff with chemical agents, Plaintiff cannot show that any resulting injury is more than *de minimis*. Second, Defendants argue that they did not act with deliberate indifference to Plaintiff's serious medical needs because Defendant Ellis did not spray Plaintiff with chemical agents, and even if Defendant Ellis did spray Plaintiff with chemical agents, Plaintiff cannot show that his medical condition was serious or that the delay in medical care caused substantial harm. Third, Defendants argue that one missed meal does not rise to the level of a constitutional claim. Fourth, Defendants argue that Plaintiff cannot overcome Defendants' entitlement to qualified immunity.

### IV.    Defendants' Summary Judgment Evidence

a.  Captain DeFoor's Internal Memorandum from the Use of Force Investigation (Doc. No. 37-1, at 14)

Defendants submit the affidavit of Jessica Riley in support of their claim that Defendant Ellis never used chemical agents against Plaintiff on January 27, 2022. Ms. Riley states that she is the custodian of records for the TDCJ Inmate Grievance Department, and that Exhibit B is a true and correct copy of the TDCJ grievance records filed by Plaintiff between January 1, 2021, and January 31, 2022. (Doc. 37-1, at 2.)

Exhibit B contains a memorandum ostensibly written by Captain J. DeFoor, a supervising TDCJ officer who investigated the use of force incident between Plaintiff and Ellis. (Doc. No. 37-1, at 14.) The memorandum is titled, "Inter-Office Communications." It is dated January 28, 2022, and bears a handwritten signature next to Captain DeFoor's name in regular print. There is no formal attestation regarding the veracity of the information in the memorandum. The memorandum states in relevant part: "Video surveillance was reviewed and at no time did Lieutenant Ellis utilize any chemical agents. There was also no weight deficiency on Lieutenant[] Ellis's Carry on Person (COP) chemical agent can." *Id.*

b.  Plaintiff's Medical Records (Doc. No. 36)

Defendants submit the affidavit of Lisa Lopez in support of their claim that any injuries from the alleged use of chemical agents were *de minimis*. Ms. Lopez states that she is the custodian of records for the University of Texas Medical Branch Correctional Managed Care Health Services Archives, and that Exhibit A is a true and correct copy of Plaintiff's medical records between January 1, 2022, and June 30, 2022. (Doc. 36, at 2.)

Defendants argue that Plaintiff's medical records show that Plaintiff's eye pain predated the use of force incident. *Id.* at 52, 85. Defendants also note that during multiple health calls in the

period following the use of force incident, Plaintiff attributed his eye pain to allergies, with no mention of being sprayed with chemical agents. *Id.* at 14, 17, 29, 35, 67–76. Defendants also cite the nurse's notes from the delayed use of force screening on February 14, 2022, which state, "[C]hemical agent released . . . . [Plaintiff] does not have any injuries at this time but he was sprayed in the Rt eye then. Stated that injury has healed since then." *Id.* at 48.

## V.    Plaintiff's Summary Judgment Evidence

To date, Plaintiff has not filed a response to Defendants' partial motion for summary judgment. However, the court finds it appropriate, given Plaintiff's *pro se* status, to acknowledge the evidence that favors Plaintiff's claims. The three main pieces of evidence that support Plaintiff's claims that he was sprayed with chemical agents are (1) the nurse's notes from the use of force screening, in which Plaintiff claims that Ellis sprayed him in the right eye with chemical agents; (2) Plaintiff's sworn declaration in his amended complaint, in which he claims that Ellis sprayed him in the face and right eye with chemical agents; and (3) Plaintiff's Step 1 and Step 2 Grievance Forms. In his Step 1 Grievance Form filed on January 28, 2022, Plaintiff states, "[Lieutenant Ellis] got mad at [Plaintiff] for Complaining [about not being fed, watered, or given a shower that day] and Sprayed [Plaintiff] in the face with chemical agents and denied [him] medical attention." (Doc. No. 37-1, at 3.) TDCJ Warden Garcia returned Plaintiff's Step 1 Form on February 8, 2022, stating, "Video surveillance was reviewed and at no time did Lieutenant Ellis utilize chemical agents." *Id.* at 4. In his Step 2 Grievance Form filed on February 15, 2022, Plaintiff specifically contests Warden Garcia and Captain DeFoor's characterization of the surveillance video footage: "Also you Can See Clearly on Cameras on the wing that Lt. Ellis sprayed [Plaintiff] directly in [his] right eye[.]" *Id.* at 18.

**LEGAL STANDARD**

A motion for summary judgment should be granted if the record, taken as a whole, "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[T]he party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).

## DISCUSSION

### I.    The Chemical Agents

####    a.    There is a Genuine Dispute About Whether Ellis Sprayed Plaintiff with Chemical Agents

Defendants contest Plaintiff's claim that Defendant Ellis used force by spraying Plaintiff with chemical agents. Defendants rely primarily on an internal memorandum created by Captain J. DeFoor, a supervising TDCJ officer who investigated the use of force incident between Plaintiff and Ellis. (Doc. No. 37-1, at 14.) The memo makes two claims: (1) Captain DeFoor reviewed video footage from the incident but did not see Defendant Ellis use chemical agents on Plaintiff, and (2) DeFoor weighed Ellis's COP chemical agent cannister and found that there was no weight deficiency. *Id.*

First, the court notes that DeFoor's memo is not proper summary judgment evidence. To be considered, evidence produced in connection with a summary judgment motion must also be admissible at trial. *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995). Affidavits must be based on personal knowledge and admissible facts; however, portions of an affidavit that are conclusory, contain inadmissible hearsay, or are not based on the affiant's personal knowledge may be stricken. *Nolen v. Corinthian Colleges, Inc.*, 2009 WL 10700095, at *6 (W.D. Tex. Mar. 26, 2009); *see also* Fed. R. Civ. P. 56(e). Hearsay is defined as a statement

7

that "the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). There are several exceptions to the rule against hearsay, including for records kept in the course of a regularly conducted activity. Fed. R. Evid. 803(6). This exception requires that the record be kept in the course of an organization's regularly conducted activities, and that making the record was a regular practice of that activity. *Id.* R. 803(6)(B)–(C).

Here, DeFoor's memo is hearsay because Defendants are offering his out-of-court statements about the contents of the security footage and the weight of Defendant Ellis's COP cannister to show that Ellis did not spray Plaintiff with chemical agents. *See* Fed. R. Evid. 801(c). Although Defendants submitted DeFoor's memo as part of the TDCJ's business records, the records custodian's sworn affidavit only covers the records themselves, not DeFoor's hearsay statements in the memo. *See* Fed. R. Evid. 803(6); *Fowler v. Smith*, 68 F.3d 124, 127–28 (5th Cir. 1995) (excluding proffered witness affidavit that relied on inadmissible hearsay). Further, Defendants have not shown that another hearsay exception applies.

Regardless, this statement alone is not sufficient to carry Defendants' burden under Rule 56. As noted above, Plaintiff's Step 2 specifically alleges that surveillance footage from the wing will show that Ellis sprayed Plaintiff with chemical agents. (Doc. No. 37-1, at 18.). And in light of Plaintiff's assertion, DeFoor's contention concerning the weight of the canister, without more, fails to demonstrate the absence of material facts related to the incident. Thus, on this record, and viewed in the light most favorable to Plaintiff, there is still a genuine dispute about whether Ellis used force by spraying Plaintiff with chemical agents. *See* Fed. R. Evid. 56(e).

It is standard practice to file the surveillance footage of a use of force incident when such evidence exists. *See, e.g.*, *Adams v. Cantwell*, No. 6:20CV11, 2022 WL 4091967 (E.D. Tex. Aug.

2, 2022). Defendants seek to rely on an officer's unsworn statement about what he saw on surveillance footage of the alleged use of force. But for some unexplained reason, Defendants did not file the surveillance footage itself. Both parties contend that the surveillance video is dispositive of Defendant Ellis's conduct. Presumably then, the court would be able to quickly resolve this question if Defendants were to seek leave to file an untimely dispositive motion and file the video with the court.

  b.  The *Hudson* Analysis is Incomplete

In the alternative, Defendants argue that even if Defendant Ellis did spray Plaintiff with chemical agents, any resulting injury was *de minimis*. But as Defendants appear to acknowledge in their motion, the Supreme Court has rejected the line of cases that immunize a prison guard's conduct simply because an inmate walks away from an altercation without significant injury: "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010); *see also McCoy v. Alamu*, 950 F.3d 226 (5th Cir. 2020), *cert. granted, judgment vacated*, 141 S. Ct. 1364, 209 L. Ed. 2d 114 (2021) (in light of *Taylor v. Rios*, 592 U.S. 7 (2020)).

In *Hudson v. McMillion*, the Supreme Court identified five non-exclusive factors that should guide the court's excessive force inquiry: "(1) the extent of injury suffered by an inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response." *Comeaux v. Sutton*, 496 Fed. App'x 368, 370 (5th Cir. 2012) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotations omitted). In *Wilkins*, the Supreme Court clarified that the *Hudson* factors serve to "shift the 'core judicial

inquiry' from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 39 (citation omitted). That is not to say that the extent of the injury is irrelevant to the Eight Amendment inquiry; indeed, it may inform other factors like the need for force and the amount of force used. *Id.* at 37. But "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 34.

Here, the medical records show that Plaintiff made several sick call requests before and after the January 27, 2022 incident. On December 22, 2021, Plaintiff submitted a sick call request complaining of "Allerg[ies], Running Noes, Eyes Hurting Really Bad (Right Eye)." (Doc. No. 36, at 52.) On January 3, 2022, Plaintiff submitted another sick call request complaining that his "Eyes [are] still hurting" and that his "Allergies [are] Still actin[g] up." *Id.* at 85. Further, in the five months following the alleged use of force on January 27, 2022, Plaintiff made several sick call requests for symptoms like dry skin, a rash, a runny nose, watery eyes, and sneezing. *See id.* at 66–76.) Notably, Plaintiff regularly attributes his symptoms to allergies, but he never attributes any eye pain or headaches to being sprayed with chemical agents. *See id.* And aside from his grievance forms, the only time Plaintiff mentions being sprayed with chemical agents was when he was examined at the delayed use of force screening two weeks after the incident on February 14, 2022. The nurse's notes from the screening state, "Inmate seen cell side and stated that he does not have any injuries at this time[,] but he was sprayed in the Rt eye then. Stated that injury has healed since then." *Id.* at 48.

Even when viewed in the light most favorable to Plaintiff, the uncontested medical records—and Plaintiff's own statements—demonstrate that Plaintiff's injuries, if any, were not serious. However, as explained above, that is only one piece of the puzzle. That Plaintiff may have

walked away from this altercation without serious injury did not give Ellis carte blanche to use chemical agents on Plaintiff without legitimate purpose. "Officials may use chemical spray where 'reasonably necessary to prevent riots or escapes or to subdue recalcitrant prisoners.' But they cannot do so 'for the sole purpose of punishment or the infliction of pain.'" *McCoy*, 950 F.3d at 231 (quoting *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975) and *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)). Defendants' motion for summary judgment fails to discuss any of the other *Hudson* factors or cite any other evidence in the record by which the court can conduct a proper excessive force analysis. Accordingly, Defendants have failed to meet their burden under Rule 56, and their motion for summary judgment on Plaintiff's excessive force claim against Ellis for the use of chemical agents fails. *See Little*, 37 F.3d at 1075 (If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response").

## II.     Deliberate Indifference

### a.     The Summary Judgment Evidence Shows That Plaintiff's Medical Needs Were Not Serious

Next, Defendants contest Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs because they failed to take Plaintiff to receive medical care after Defendant Ellis allegedly sprayed Plaintiff with chemical agents. Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

To satisfy the exacting deliberate indifference standard, a plaintiff must show two things: (1) an objective exposure to a substantial risk of serious harm, and (2) that the official acted or

failed to act with deliberate indifference to that risk of harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Id.* at 345 n.12. A prison official acts with deliberate indifference if the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official also draws the the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *See Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."). Medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Here, Defendants argue that they were not deliberately indifferent to Plaintiff's serious medical needs because Defendant Ellis never sprayed Plaintiff with chemical agents. (Doc. No. 37, at 11.) But there are genuine fact issues about Ellis's use of force that preclude summary judgment on that basis. Alternatively, Defendants argue that even if Ellis did spray Plaintiff with chemical agents, Plaintiff cannot show that his medical condition was serious.

In his amended complaint, Plaintiff alleges that he requested to be taken to the infirmary after Ellis sprayed him with chemical agents, but Plaintiff's medical records show that he did not file a sick call request until February 14, 2022—over two weeks after the alleged use of force. (Doc. No. 36, at 84.) In that request, Plaintiff says that he has migraines and watery eyes, but he appears to attribute his symptoms to "really bad" allergies, not to being sprayed with chemical

agents. *See id.* Further, Plaintiff's own statements at the use of force screening indicate that any injury Plaintiff sustained was so minor that it healed during the two-week period following the alleged use of force on January 27, 2022. *See id.* at 48.

Based on these medical records, Defendants have met their initial burden of proof under Rule 56 to show that Plaintiff's injuries did not pose a substantial risk of serious harm. Plaintiff did not file a response and has not provided any evidence to rebut Defendants' claims about the extent of his injuries. Under Local Rule 7(e), a party has twenty-one days from the date a motion for summary judgment is filed to submit a response and any supporting documents. "A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." L.R. CV-7(d). Thus, even when viewed in the light most favorable to Plaintiff, the uncontested medical records—and Plaintiff's own statements—demonstrate that Plaintiff's injuries, if any, do not rise to the level of a constitutional claim for deliberate medical indifference. *See Varnado*, 920 F.2d 320 at 321 (Medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference); *Simmons v. Murphy*, 37 Fed. App'x 87 (5th Cir. 2002) (affirming district court's § 1915(e) screening where medical records and inmate's own allegations "support the determination that [prison officials] did not act with deliberate indifference and that his condition was not serious").

    b.   <u>Plaintiff Failed to State an Eighth Amendment Claim for Deprivation of Food &amp; Water</u>

Next, Defendants argue that Plaintiff's claim that Defendants deprived him of food and water on January 27, 2022, fails to state a claim under the Eighth Amendment. The Eighth Amendment's prohibition against cruel and unusual punishment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing,

and medical care. *Herman v. Holiday,* 238 F.3d 660, 664 (5th Cir. 2001). However, the Constitution does not require that inmates be housed in comfortable prisons. *Id.* "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.* For instance, in *Talib*, the Fifth Circuit held that failing to provide a prisoner one out of every nine meals over a five-month period did not rise to the level of a constitutional violation. *Id.* Even two meals a day may be adequate. *Green v. Ferrell*, 801 F.2d 765, 770–71 (5th Cir. 1986).

Here, Plaintiff claims that he was denied food and water for the entire day on January 27, 2022, however he does not allege that this was a regular occurrence. While the court understands that this deprivation may have caused Plaintiff some discomfort, it cannot be said that Plaintiff was denied the "minimal civilized measure of life's necessities." *See Wilson*, 501 U.S. at 298. Further, Plaintiff has not shown that he suffered any physical injury from one day's lack of food and water. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]"); *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (stating a "physical injury" under § 1997e(e) need not be significant but must be more than *de minimis*). As such, Plaintiff has failed to state an Eighth Amendment claim against Defendants for deprivation of food and water.

### III.    Qualified Immunity

Last, Defendants argue that Plaintiff has failed to demonstrate that Defendants are not entitled to qualified immunity. Public officials are entitled to qualified immunity from liability for

civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). There is a two-step test for determining whether qualified immunity applies: (1) "whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights;" and (2) "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).

Here, Plaintiff has failed to show constitutional violations for failing to provide medical care and failing to provide food and water; therefore, the court need not address qualified immunity on those grounds. *See Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007) (plaintiff must show that defendant violated a constitutional right). As for whether Defendant Ellis used excessive force by spraying Plaintiff with chemical agents, the only argument advanced by Defendants is that Defendant Ellis did not spray Plaintiff with chemical agents at all: "Evans cannot show that Defendants['] conduct in *not* using any chemical agents implicated the violation of a constitutional right." (Doc. No. 37, at 15) (alteration in original). As discussed above, there remain genuine fact issues that preclude summary judgment on that basis. *See Snyder v. Trepagnier*, 142 F.3d 791, 799–800 (5th Cir. 1998) (Where the plaintiff has submitted evidence sufficient to create material questions of fact relative to immunity, the question of immunity is properly one for the jury to decide).

Moreover, Defendants did not raise the second prong of qualified immunity with respect to the use of chemical agents. Defendants merely raise a generic argument with respect to all claims that Plaintiff failed to show that "Defendants' conduct was objectively unreasonable." *Id.* Thus,

while the burden would rest with Plaintiff to show that the qualified immunity defense does not apply, Plaintiff need not rebut an argument not presented in Defendants' motion. As Defendants presented no argument that the use (or nonuse) of chemical agents was objectively unreasonable, the court cannot consider whether Defendant Ellis would be entitled to qualified immunity on the second prong of the analysis. Furthermore, even if Defendants' generic assertion of the second prong with respect to all claims could be construed as properly before the court (which it is not), the court would be unable to undertake this analysis, given the incompleteness of the summary judgment record before it. Therefore, Defendants' request for summary judgment based upon qualified immunity should be denied.

### CONCLUSION

For the reasons stated above, the court **RECOMMENDS** that Defendants' partial motion for summary judgment on the deliberate indifference claims for failure to provide medical care and failure to provide food and water (Doc. No. 37) be **GRANTED**, and that those claims be **DISMISSED WITH PREJUDICE**. The court **FURTHER RECOMMENDS** that Defendants' partial motion for summary judgment on the excessive force claim against Defendant Ellis for spraying Plaintiff with chemical agents (Doc. No. 37) be **DENIED**.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within 14 days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79

F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 13th day of December, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE